JAMAICA WATER SUPPLY COMPANY, Appellant, *v.* CITY OF NEW YORK, Respondent.

Argued October 20, 1938; decided January 10, 1939.

The following question was certified:

"Should the plaintiff have had summary judgment as prayed for in the notice of motion?"

*Jackson A. Dykman* and *Jules Haberman* for appellant. In the absence of a contract between a municipality and a waterworks corporation, the Public Service Commission has complete jurisdiction to regulate rates for water supplied to a municipality. (*City of New York* v. *Maltbie,* 159 Misc. Rep. 276; 248 App. Div. 39; 274 N. Y. 90.) A tariff schedule filed in accordance with the Public Service Law (Cons. Laws, ch. 48) and not suspended becomes effective upon the expiration of thirty days with the same force and effect as if the rates contained in it had been directly prescribed by the Legislature. (*Town of North Hempstead* v. *P. S. Corp.,* 231 N. Y. 447; *Public Serv. Comm.* v. *Pavilion Nat. Gas Co.,* 232 N. Y. 146; *Midland Realty Co.* v. *K. C. Power & Light Co.,* 300 U. S. 109; *People ex rel. N. Y. Steam Co.* v. *Straus,* 186 App. Div. 787; 226 N. Y. 704; *People ex rel. Village of S. Glens Falls* v. *P. S. Comm.,* 225 N. Y. 216; *Public Service Comm.* v. *Iroquois Nat. Gas Co.,* 184 App.

Div. 285; 226 N. Y. 580.) No contract existed for the supply of water between plaintiff and defendant at the time of filing its tariff schedules nor at any time thereafter. (*Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318; *Harlem Gas Co.* v. *Mayor*, 33 N. Y. 309; *City of New York* v. *Citizens Water Supply Co.*, 199 App. Div. 169; 235 N. Y. 584; *Silberberg* v. *Citizens Water Supply Co.*, 116 Misc. Rep. 595; 208 App. Div. 818; *City of New York* v. *Maltbie*, 274 N. Y. 90.)

*William C. Chanler, Corporation Counsel* (*Herman Horowitz* and *Davidson Sommers* of counsel), for respondent. Prior to January 1, 1934, the Public Service Commission had no jurisdiction to fix rates for hydrant services furnished to the city. (*City of New York* v. *Maltbie*, 274 N. Y. 90; *Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318.) Even if the Public Service Commission had jurisdiction to fix the hydrant rates, the filing of plaintiff's schedules did not have the effect of establishing a legal hydrant rate. (*City of New York* v. *Maltbie*, 274 N. Y. 90; *Matter of Dry Dock, E. B. & B. R. R. Co.*, 254 N. Y. 305; *City of New York* v. *New York Edison Co.*, 196 App. Div. 644.)

CRANE, Ch. J. Article 4-B of the Public Service Law (Cons. Laws, ch. 48), added by the Laws of 1931, chapter 715, section 3, places water works and water companies under the jurisdiction of the Public Service Commission. The method of procedure is the same as that applicable to other rate-fixing bodies. The company files schedules of its rates, which become effective unless they are reduced or modified by the Commission. Subdivision 10 of section 89-c, concerning the powers of the Commission, reads: " Shall have power to require every water-works corporation to file with the commission and to print and keep open to public inspec-

tion schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or· to be used, and all general privileges and facilities granted or allowed by such corporation; but this subdivision shall not apply to state, municipal or federal contracts. Unless the commission otherwise orders, no change shall be made in any rate or charge, * * * except after thirty days' notice to the commission and publication of a notice to the public of such proposed change once in each week for four successive weeks in a newspaper having general circulation in the county or counties containing territory affected by the proposed change, which notice shall plainly state the changes proposed to be made in the schedule then in force and the time when the change will go into effect. * * * No such corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such service as specified in its schedule filed and in effect at the time; * * *."

The plaintiff filed schedules with the Commission in 1933. The rates therein stated became effective unless disapproved by the Commission. To ascertain whether such charges were fair and reasonable or should be disapproved, that body could hold hearings and make investigations. The Commission held hearings and a schedule rate of $45 was approved as taking effect in November, 1933. Its record reads (Exhibit E), " Issued: September 25, 1933 — Effective: November 1, 1933." If there had been a contract with the city regarding rates, or the parties so understood, the hearing and approval of the Public Service Commission would not have been given, as the statute did not so require. In fact, there was no contract.

In 1929 the Commissioner of Water Supply, Gas and Electricity wrote a letter in the form of an order fixing rates:

" Letterhead of Commissioner of Water Supply, Gas and Electricity

" NEW YORK, *December* 20, 1929.

" JAMAICA WATER SUPPLY COMPANY
" Fire Hydrant Rental

" The Jamaica Water Supply company having filed claim with the Department of Finance for the payment of additional hydrant rental for the eight-year period ending December 31, 1928, continues its demand for payment for hydrant rental service at the rate of forty-five dollars ($45.) per annum per hydrant.

" Therefore, acting under authority of Section 472 of the Charter, on the basis of reports submitted by the Chief Engineer and filed with the Comptroller, and being advised by the Engineer that the hydrant rental asked by the company for the current year is the fair and reasonable value for hydrant rental service rendered by the Jamaica Water Supply company, I hereby fix and establish the rate of forty-five dollars ($45.) per annum per hydrant, effective as of January 1, 1929.

" (Signed)    JOHN J. DIETZ,
" *Commissioner.*"

This was not a contract. He had no authority to make a contract, and the fact that it was acted upon and the water furnished at such rates did not create a contract.

The parties appeared before the Public Service Commission after a schedule was filed and produced evidence. At first one of the schedules was rejected; a later schedule was approved and became the rate per hydrant which this company could charge the city. To repeat: The Public Service Commission had no power to conduct these proceedings or to approve or reject any rates fixed

by contract. The words are, " but this subdivision shall not apply to state, municipal or federal contracts." No schedules, therefore, could be required to be filed when the matter was covered by city contract. The plaintiff complied with this law because there was no contract; filed its schedules, which became effective until disapproved. They were approved, as above stated. However, it is immaterial whether the parties thought there was a contract or not or whether they were in doubt about it. The schedules were filed stating the rate; they became effective *by statute*, unless there were a contract, a real contract, between the city and the water company. No such contract existed. The company is, therefore, entitled to recover the rate approved by the Public Service Commission, and in effect from January 1, 1934, to February 29, 1936.

The only answer or claim of the city is that the order of December 20, 1929, of the Water Commissioner constituted a contract. It is not such a contract as the city was authorized to make, and the Commissioner had no power to enter into a contract; neither was the order in the form of a contract, or considered to be a contract. It has none of the elements of a contract and is not such in fact. The city then takes the position, as does the dissenting opinion, that this might have been a contract by acquiescence or by acknowledgment. This may be very true so far as it has been executed and the water paid for, but it is not true for any period after the Public Service Commission took hold of the matter and the plaintiff filed its schedules as required by subdivision 10 of section 89-c of the Public Service Law. Whatever informal arrangement may have theretofore existed, whatever order of the Water Commissioner the plaintiff may have obeyed, these all terminated when the plaintiff complied with the Public Service Law and its water schedules were approved as of November, 1933. The plaintiff's proceedings have been regular and in accord-

ance with law. In no particular has the city pointed out wherein it has failed to comply with the provisions of the Public Service Law for the fixing of rates; whereas, on the other hand, the city failed to make a contract for the supply of water, as it could have done, and is seeking to transform an informal letter of a commissioner into a formal, binding contract.

There are no questions of fact to be determined, and the motion of the plaintiff for summary judgment for the period in question should be granted.

The orders should be reversed and the motion granted, with costs in all courts. The question certified is answered in the affirmative.

FINCH, J. (dissenting). This action was brought against the city of New York by plaintiff to recover payment at the rate of forty-five dollars per hydrant for services for water supplied by the plaintiff during the years 1934, 1935 and 1936. Upon the argument of the motion defendant conceded its liability for the amount sought to be recovered for the period from March 1, 1936, to December 31, 1936, at the rate of forty dollars per hydrant, and took no appeal from that portion of the order which granted summary judgment for that amount for that period. Thus the only question remaining upon this appeal is whether plaintiff is entitled to partial summary judgment for the period from January 1, 1934, to February 29, 1936. Both the Special Term and the Appellaté Division denied the motion for summary judgment, the latter upon the ground that there are issues of fact which compel the denial of summary judgment and relegate the parties to a trial, so that the facts arising from the dealings of the plaintiff with the defendant may be there put in evidence.

For upwards of twenty years prior to 1929 the rate for this hydrant service furnished by the plaintiff to the city was eighteen dollars per hydrant per annum, as

fixed in the year 1908. For a time previous to 1929 plaintiff had been urging a higher rate. In the latter part of 1929 the then Commissioner of Water Supply retroactively fixed forty-five dollars as the hydrant rate to be paid to plaintiff, effective as of January 1, 1929. The action of the Commissioner was promulgated by the following:

"Letterhead of Commissioner
of Water Supply, Gas and
Electricity

"NEW YORK, *December* 20, 1929

"JAMAICA WATER SUPPLY COMPANY
"Fire Hydrant Rental

"The Jamaica Water Supply Company having filed claim with the Department of Finance for the payment of additional hydrant rental for the eight-year period ending December 31, 1928, continues its demand for payment for hydrant rental service at the rate of forty-five dollars ($45.) per annum per hydrant.

"Therefore, acting under authority of Section 472 of the Charter, on the basis of reports submitted by the Chief Engineer and filed with the Comptroller, and being advised by the Engineer that the hydrant rental asked by the company for the current year is the fair and reasonable value for hydrant rental service rendered by the Jamaica Water Supply company, I hereby fix and establish the rate of forty-five dollars ($45.) per annum per hydrant, effective as of January 1, 1929.

"(Signed) JOHN J. DIETZ,
"*Commissioner.*"

The above fixed an annual rate and, though stating the date of beginning, specifies no date of termination. The rate so fixed was acted on by both parties for the succeeding four years. On January 10, 1934, the then Commissioner suspended the previously fixed rate as of January 1, 1934. Subsequently the Commissioner

attempted to fix a rate of eighteen dollars and fifty cents per hydrant, effective January 1, 1934. This offer, in contrast with the forty-five dollar rate fixed in December, 1929, was not accepted by the plaintiff and never became effective. After January 1, 1934, plaintiff continued to supply the city with water but without any agreement as to price, unless certain proceedings before the Public Service Commission entitle it as a matter of law to have judgment for the claimed rate. We now consider these proceedings. In 1931, pursuant to the enactment of article 4-B of the Public Service Law, plaintiff filed with the Commission two tariff schedules, P. S. C. No. 1 and P. S. C. No. 2. P. S. C. No. 1 was to be effective until November first, at which time P. S. C. No. 2 was to take effect. P. S. C. No. 2 was suspended by the Public Service Commission and never became effective. On September 25, 1933, plaintiff filed a third schedule, P. S. C. No. 3, to be effective November 1, 1933, then superseding P. S. C. No. 1. This P. S. C. No. 3 the Commission approved without prejudice to an investigation.

The question which is presented for decision is whether we may say, as a matter of law, that the plaintiff intended to file these schedules for the purpose only of fixing a rate for the future, or whether the plaintiff filed these schedules solely for the purpose of the information of the Commission and as showing that the plaintiff was not relying on establishing a new rate schedule, but was relying upon and merely filing the order of the Commissioner of December 20, 1929. Did these schedules fairly give notice to the city that they would have the effect of establishing a new rate pursuant to the Public Service Law? Or were these schedules filed solely for the purpose of giving information to the Commission that plaintiff was relying on the order of the Commissioner, made December 20, 1929, pursuant to which they were still supplying water, and which order had never in any

way been revoked nor had the city made any dissent to the carrying out of this order. The schedule, in fixing the rate of forty-five dollars per hydrant, refers to it as a rate fixed by order of the Commissioner of Department of Water Supply, Gas and Electricity, dated January 1, 1929, and had appended thereto and as a part thereof a copy of this order of the Commissioner. Furthermore, the schedule refers to this order as a contract. Also, this order was listed in the table of contents under the heading " contracts " and was grouped with plaintiff's contracts with other municipalities. Furthermore, these schedules nowhere invoked the authority of the Commission. Also, in this connection, it is important to note the contrasting language used by the plaintiff in its schedule P. S. C. No. 4, which was filed in 1936 after the Public Service Commission had investigated and fixed a hydrant rate of forty dollars. No reference is made in P. S. C. No. 4, as there was in all the other schedules, either to contracts or to a rate fixed by order of the Commissioner of Department of Water Supply, Gas and Electricity of New York, dated January 1, 1929. In addition, this latter schedule, P. S. C. No. 4, is not based on the 1929 order of the Commissioner but is " issued in compliance with order of the Public Service Commission made in case No. 8356." The foregoing would seem to leave little doubt that P. S. C. Nos. 1, 2 and 3 were filed solely for the information of the Commission. It does not negative such construction to consider that if these schedules were filed solely for the information of the Commission there was less likelihood of an investigation by the Public Service Commission than if they had been filed by the plaintiff for the purpose of establishing a rate. And apparently that was the effect, for it was not until three years later, or January, 1934, when the city, by revoking the rate of forty-five dollars, which had been established by common consent, compelled

the filing of a schedule, and started an investigation with the result of fixing the rate at forty dollars.

On the foregoing facts there is little doubt but that we might hold, as a matter of law, that these schedules were filed solely for the purpose of informing the Commission that the plaintiff was relying on the rate fixed by common consent, based upon the order of the Commissioner, which was appended to such schedules. As the opinion at Special Term well said, " True, the schedules filed by the plaintiff from time to time (PSC No. 1, water; PSC No. 2, water, and PSC No. 3, water) contained the rates to be charged to the defendant, but those rates were therein referred to as ' fixed by order of the Commissioner of Department of Water Supply,' etc., and that order was appended to such schedule." (167 Misc. Rep. 863, 866.)

It is not necessary, however, for us to go so far as to hold that these schedules were filed as a matter of law for the information of the Public Service Commission that the plaintiff was relying on the 1929 order of the Commissioner fixing the rate at forty-five dollars. It appears in the record that subsequent to the filing of these schedules certain proceedings took place between the plaintiff, the City of New York and the Commission. The Commission directed a hearing. A hearing was had before the Public Service Commission, on notice to the Acting Commissioner of Water Supply and plaintiff attended this hearing. Apparently the city appeared but asserted that it would not be bound by any valuations approved in the proceeding. On December 20, 1932, the Public Service Commission rejected Schedule No. 2 without prejudice to an application for a review of the rates and charges by the plaintiff. It may be that out of the appearance of the plaintiff and defendant before the Public Service Commission and the action of the Commission in connection therewith, that it will be found as a fact that these schedules were filed not solely

for the purpose of the information of the Commission, in the hope of continuing to supply water pursuant to the 1929 order of the Commissioner, but for the purpose of establishing a rate under the Public Service Law, wholly apart from the rate fixed by the order of the Commissioner.

If the trial court reaches the conclusion that these schedules were filed merely to inform the Public Service Commission that the plaintiff was relying upon the 1929 order of the Commission then there remains another issue of fact, namely, the reasonable value of the water supplied, which also must await the trial. If, on the other hand, it is found that the plaintiff by these schedules intended to disregard the 1929 order of the Commissioner of Water Supply and attempt to fix a new rate, then the plaintiff will be entitled to judgment for the period in question at the rate of forty-five dollars per hydrant.

It follows that the order appealed from should be affirmed, with costs, and the question certified answered in the negative.

LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with CRANE, Ch. J.; FINCH, J., dissents in opinion in which RIPPEY, J., concurs.

Orders reversed, etc.